**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

**D.C.D. Co., LLC, a Michigan**
**Limited Liability Company,**

              **Plaintiff(s),**          **CASE NUMBER: 04-72944**
                                    **HONORABLE VICTORIA A. ROBERTS**

**v.**

**BANK OF AMERICA N.A., a**
**Federally Chartered Bank,**
**et al.,**

              **Defendant(s)/Third Party**
              **Plaintiff(s),**

**v.**

**ALLAN R. MICHEL, an individual,**

              **Third Party Defendant.**
_____/

**ORDER**

**I.    INTRODUCTION**

      This matter is before the Court on Third-Party Defendant Allan Michel's Motion

for Evidentiary Hearing and Stay of Proceedings and Defendant/Third-Party Plaintiff

Bank of America's Motion to Compel Deposition of Allan Michel.  The Court **GRANTED**

Third-Party Defendant Michel's request for an evidentiary hearing, which was held on

May 19, 2005.

      For the reasons stated below, the Court **GRANTS** Third-Party Defendant

1

Michel's request for a stay of proceedings and **DENIES** Defendant/Third-Party Plaintiff

Bank of America's Motion to Compel Deposition of Allan Michel.

## II.    BACKGROUND

Plaintiff D.C.D. Co., L.L.C. ("DCD") is a Michigan corporation that buys and sells

cars.  DCD contracted with Third-Party Defendant Allan R. Michel ("Michel") to jointly

purchase cars in Canada with Canadian funds, import them to the United States, and

sell them for profit.  Michel located cars to purchase and DCD provided the financing.

Michel received 70% of the net profits and DCD received the remaining 30%.

Defendant/Third-Party Plaintiff Bank of America, N.A. is a federally chartered

bank, and its wholly owned subsidiary, Defendant/Third-Party Plaintiff Bank of America,

Canada (hereinafter collectively "Bank of America"), is a Canadian entity.  DCD

maintained accounts with Bank of America to facilitate the purchase of cars in Canada

and to conduct foreign exchange transactions.  When DCD earned a profit on auto or

foreign exchange investments, the profits were held in DCD's name at Bank of America

and sent to DCD directly in the form of a check.  If DCD suffered a loss, Bank of

America either debited the money from DCD's account or the money was wired to Bank

of America by a member of DCD.

This action arises from Michel's alleged diversion of profits belonging to DCD to

himself, via Bank of America.  DCD alleges that, between December 2002 and early

2003, Bank of America permitted Michel to use DCD's credit and/or funds for the

purchase or sale of foreign exchange futures.  During that time, all of Michel's ventures

turned a profit and Bank of America sent checks totaling $174,390.11[1] directly to Michel, rather than to DCD or its account. DCD says it never authorized Bank of America to transfer DCD investment profits or other funds directly to Michel.

When DCD learned of Michel's transactions, it says that it protested Bank of America's unauthorized transfers to Michel and demanded that the proceeds from the transactions be re-credited to its account. Bank of America refused. DCD then brought this action against Bank of America alleging: that Bank of America breached its duty to customers (Count I); conversion (Count II); and, violation of M.C.L. §440.4401, which addresses the circumstances under which a bank may make a charge against a customer's account. In turn, Bank of America filed a Third-Party Complaint against Michel alleging that it believed Michel to be an employee or member of DCD, and that it made the payments to Michel at his direction, purportedly as a principal of DCD. Bank of America seeks indemnity (Count I) and alleges conversion (Count II), fraud/misrepresentation (Count III), and silent fraud (Count IV).

There are two other cases pending against Michel and a third that may be brought. In January 2005, the Oakland County Prosecutor's office charged Michel with the felony offenses of embezzlement and larceny by conversion of property valued at $20,000 or more and belonging to DCD. Detective Sergeant Gary Muir ("Sergeant Muir") of the Michigan State Police testified that the charges stem from a $112,000 check that was intended for DCD but that Michel allegedly diverted to himself in

---

[1]DCD alleges that the transactions were as follows: December 3, 2002--$16,746.41; January 14, 2003--$93,251.30; February 15, 2003--$34,392.40; and, early 2003 (date not given)--approximately $30,000.

3

November 2003.  Per Sergeant Muir, a DCD creditor gave Michel a cashiers check to turn over to DCD.  Allegedly, Michel converted the cashiers check into his name and deposited the money into his own bank account.   The case is scheduled for trial on June 6, 2005.

Sergeant Muir testified that he recently referred a second criminal action to the Alpena County Prosecutor's Office in Alpena, Michigan.  In that case, DCD financed Michel's purchase of eleven high-end sport utility vehicles.  Between November and December of 2003, Michel allegedly sold those vehicles to a car dealership that he owns in Alpena for a nominal amount and re-sold them to third parties at a significant profit.  Instead of depositing the profits into the DCD bank account in accordance with the terms of his and DCD's agreement, Michel allegedly diverted the profits to himself and other named defendants.  At the time of the evidentiary hearing, a decision had not been made by the Alpena County Prosecutor's Office on whether to proceed with charges.

Lastly, DCD filed a civil complaint against Michel and others in Oakland County Circuit Court.[2]  The Oakland County matter is based in part on the allegations made in the Alpena criminal complaint, as well as another similar transaction.  Judge Gene Schnelz, who is presiding over the Oakland County civil case, denied Michel's motion for a stay and advised that Michel may assert the Fifth Amendment privilege subject to the civil consequences.

The parties have begun discovery in this matter.  However, Bank of America

---

[2]*DCD Co., L.L.C. v Michel, et al.,* Case Number 04-055800.

4

says that Michel has evaded its attempts to schedule his deposition despite an Order by this Court directing him to cooperate in that effort.  *See Order Granting Extension of Discovery Dates,* December 6, 2004.  Therefore, Bank of America moves to compel Michel to appear for a deposition.[3]  Michel contends, however, that the Court should deny Bank of America's motion and stay these proceedings until the pending Oakland County criminal charges are resolved.

## III.   ANALYSIS

Michel bases his request for a stay on two primary assertions: 1) the allegations in this case could lead to additional criminal charges, and 2) giving testimony in this case may preclude him from asserting the Fifth Amendment privilege against self-incrimination in the pending Oakland County criminal case, because his testimony could be viewed as a waiver of the privilege.  In opposition, DCD argues that the pending criminal charges are unrelated to the allegations in this case, and both DCD and Bank of America argue that Michel has already waived his Fifth Amendment privilege.

The privilege against self-incrimination is based upon the Fifth Amendment provision which provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself. . . ."  U.S. Const., Amend. V.  The Fifth Amendment privilege may be invoked in civil as well as criminal proceedings.  *United States v U.S. Currency,* 626 F.2d 11, 14 (6th Cir. 1980), *cert den.,* 449 U.S. 993 (1980).  However, it is only properly invoked when the witness "has reasonable cause to apprehend a real danger of incrimination."  *Morganroth v Fitzsimmons,* 718 F.2d 161, 167 (6th Cir. 1983);

---

[3]DCD concurs in the motion.

*Hoffman v United States*, 341 U.S. 479, 486 (1951). That is, "'the information for which the privilege is claimed must harbor the potential of exposing the speaker to a criminal or quasi-criminal charge.'" *U.S. Currency,* 626 F.2d at 14 (*quoting In re Daley*, 549 F.2d 469, 478 (7th Cir. 1977), *cert den.,* 434 U.S. 829 (1977)).  The Fifth Amendment "privileges [a witness] not to answer questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Morganroth*, 718 F.2d at 165.  The privilege also extends to information that would not alone support a criminal conviction, but "would furnish a link in the chain of evidence needed to prosecute the [witness] . . . ." *Hoffman,* 341 U.S. at 486; *Blau v United States*, 340 U.S. 159, 161 (1950).

It is for the trial court to decide whether a witness is entitled to invoke the privilege and the court has broad discretion in making that determination.  *United States v Gaitan-Acevedo,* 148 F.3d 577, 588 (6th Cir. 1998), *cert. den.,* 525 U.S. 912 (1998); *Morganroth*, 718 F.2d at 167; *Hoffman,* 341 U.S. at 486.   In its analysis, the trial court should consider the facts in evidence and the court's "personal perception of the peculiarities of the case." *Hoffman,* 341 U.S. at 486.

Based on the testimony and oral argument, the Court finds that a stay is warranted.  If Michel gives testimony in this case, he argues that the court presiding over the Oakland County criminal matter may view his testimony as a waiver of the Fifth Amendment privilege and allow his statements to be used against him in that proceeding.  Michel's claim raises two issues.

The first issue is whether there is a sufficient factual connection between this case and the pending criminal matter to validate Michel's concern.  The Court finds that

6

there is evidence that the cases are related.  On their face, the allegations of DCD and Bank of America in this case appear distinct from those in the Oakland County criminal case and the other pending cases.  However, it became evident during the hearing that the Michel's alleged schemes are convoluted and that the allegations in all of the cases are entwined.  It is alleged in each case that Michel exploited his position as an agent of DCD to retain profits allegedly belonging in whole or in part to DCD.  What is most relevant to the pending criminal charges in Oakland County though, is the assertion by counsel for Michel that he may assert the defense that he was entitled to the $112,000 check for which he is criminally charged in Oakland County as payment for one or more of the 2500 transactions between DCD and Michel.  If so, counsel points out that the full scope of DCD and Michel's business relationship and their transactions, including the transactions at issue here, could be raised to support his defense.  Consequently, it is possible that any statements made by Michel in this case could be directly relevant to the allegations in the criminal trial.

The second issue is whether, even though the cases are related, there is a realistic threat that statements made by Michel in this proceeding may be used against him in a separate, independent proceeding.  There is a split of authority on this issue.  It is settled that a court can deem a waiver of the privilege against self-incrimination when a witness voluntarily testifies to some extent on a subject but attempts in the *same proceeding* to invoke privilege against further inquiry.  *Rogers v United States,* 340 U.S. 367, 373 (1951).  However, there is disagreement among the circuits regarding whether waiver of privilege in one proceeding operates as a waiver in other *separate* proceedings.

7

The majority view is that waiver of privilege on a subject in one proceeding does not preclude one from invoking waiver on the same subject in an independent proceeding, if the witness is still at risk.  *See Morganroth,* 718 F.2d at 165.  The rationale of the majority view is that "during the period between the successive proceedings conditions might have changed creating new grounds for apprehension, *e.g.,* the passage of new criminal law, or that the witness might be subject to different interrogation for different purposes at a subsequent proceeding, or that repetition of testimony in an independent proceeding might itself be incriminating, even if it merely repeated or acknowledged the witness' earlier testimony, because it could constitute an independent source of evidence against him or her."  *Id* (*citing In re Corrugated Container Antitrust Litigation, Conboy*, 661 F.2d 1145, 1155 (7th Cir. 1981), *aff'd*, 459 U.S. 248 (1983)).  The courts that follow the minority view, however, reason that courts should not mechanically presume that a witness is in any greater jeopardy from the second disclosure than from the first: "We think the better rule is to hold that the waiver carries through unless there is new material, or possibly new conditions, that may give rise to further incrimination."  *Ellis v United States*, 416 F.2d 791, 805 (D.C. Cir. 1969)(footnote omitted).

Because neither the Supreme Court nor the Sixth Circuit has adopted a position on this issue, *see Morganroth,* 718 F.2d at 165 (declining to adopt a position based on its finding that it was not necessary to reach the question), courts within this circuit are not bound to follow the majority view and may deem Michel's testimony in this case to be a waiver of privilege on the same subjects in other proceedings.

When a court finds, as this Court does, that civil proceedings may interfere with a

8

party's exercise of the privilege against self-incrimination, the court may choose any means it deems appropriate under the circumstances to fairly balance the interests of the parties, including a stay of the civil proceedings, entering a protective order, or delaying discovery.[4]  Because the criminal charges pending in Oakland County appear sufficiently related and there is a possibility that waiver of privilege in this case may be viewed as a waiver as to those same subjects in the criminal case, the Court finds that a stay of these proceedings is warranted until the Oakland County criminal case is resolved.

The Court is not persuaded by DCD and Bank of America's assertion that Michel cannot invoke privilege in this case because he has already waived the Fifth Amendment privilege by making statements in the Oakland County civil case via an affidavit.[5]  In the Oakland County civil case, Michel executed an "Affidavit of Meritorious Defense" in support of his effort to set aside the default that was entered against him. In the Affidavit Michel states in relevant part:

> 2.    That he vehemently denies engaging in any fraudulent activity whatsoever.
>
> 3.    That he vehemently denies in [sic] converting any property or

---

[4]*See United States v Kordel,* 397 U.S. 1, 8-9 (1970); *U.S. Currency,* 626 F.2d at 17; *United States v A Leasehold Interest in Property Located at 850 S. Maple,* 743 F.Supp. 505, 514 (E.D. Mich. 1990); *United States v Mellon Bank,* 545 F.2d 869, 873 (3rd Cir. 1976); *SEC v Dresser Industries, Inc.,* 628 F.2d 1368, 1376 (D.C. Cir. 1980), *cert den.,* 449 U.S. 993 (1980); *Brock v Tolkow,* 109 F.R.D. 116, 120-121 (E.D. N.Y. 1985); *In re Phillips, Beckwith & Hall,* 896 F.Supp. 553, 557-558 (E.D. Va. 1995).

[5]DCD says Michel was also interviewed by the Michigan State Police and freely answered questions relative to the pending criminal charges.  However, DCD provides no information regarding exactly what questions were asked and what answers were given.

thing belonging to someone other than himself.

3.[sic]  That as to any of the transactions referenced in either the
complaint or cross-claim, he vehemently asserts he acted in
good faith with the firm belief his activities were authorized.

Pl. Exh. 2.

DCD and Bank of America apparently advocate the minority view regarding

waivers.  However, the statements that Michel made in his affidavit do not constitute a

waiver of privilege regardless of whether the Court applies the majority or minority rule.

Under the majority view, Michel's affidavit does not preclude invocation of privilege in

this case because the affidavit was submitted in a separate case.  *See Morganroth,* 718

F.2d at 165.

Michel's affidavit also does not constitute a waiver of privilege under the minority

view because the complaint here is based on different allegations for which additional

charges could be brought.  Although no charges have been brought and are not

presently being considered with regard to the foreign exchange transactions at issue in

this case, Sergeant Muir testified that he would investigate additional charges if

supporting documentation were submitted by DCD and venue was proper in Michigan.

And, counsel for Bank of America candidly admitted that he could not rule out the

possibility that Bank of America may file a criminal complaint on its own behalf.

Therefore, Michel's statements in the Oakland County civil case come within the

exception for "new material, or [] new conditions, that may give rise to further

incrimination[,]" and do not preclude him from invoking privilege in this case.  *Ellis*, 416

F.2d at 805 (footnote omitted).

**IV.    CONCLUSION**

10

Third-Party Defendant Michel's motion for a stay of proceedings until the Oakland County criminal charges are resolved is **GRANTED** and, in light of the Court's ruling, Bank of America's motion to compel Michel's deposition is **DENIED**.  The Court makes no finding at this time regarding whether a stay is warranted based on the charges referred to the Alpena County Prosecutor's Office.  Michel is directed to notify opposing counsel and the Court when the Oakland County criminal case is concluded.

**IT IS SO ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: June 3, 2005

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 3, 2005.

s/Linda Vertriest
Deputy Clerk