**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

D.C.D. CO., LLC, a
Michigan limited liability
company,

        Plaintiff,        CASE NUMBER:04-72944
                                     HONORABLE VICTORIA A. ROBERTS

v.

BANK OF AMERICA, N.A., a federally
chartered bank, and BANK OF AMERICA CANADA,
a Canadian entity,
        Defendants/Third Party
        Plaintiffs,
v.

ALLAN R. MICHEL, an individual,

        Third-Party Defendant..
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendants'/Third-Party Plaintiffs' Bank of America, N.A. and Bank of America Canada's Motion to Dismiss Case And/Or Compel Arbitration. For the following reasons, the Court **DENIES** Defendants' motion.

**II.    BACKGROUND**

Plaintiff D.C.D. Co., LLC ("DCD") is a limited liability company owned by two brothers, H. Joel and Alan Must ("Must Brothers"). DCD leases, purchases, and sells vehicles in Canada. The Must Brothers are shareholders in another business, Detroit

City Dairy, Inc. ("Detroit City Diary"), which sells and purchases fresh food products. DCD and Detroit City Dairy are separate and distinct entities.

DCD conducts business with Defendants Bank of America, N.A. and Bank of America Canada (collectively "BofA"). DCD bought cars in Canada by purchasing or selling foreign exchange futures and option contracts and conducting other foreign exchange transactions with BofA. To pay for a purchase in Canadian dollars, U.S. Dollars were wired from DCD's account at BankOne in Detroit to BofA in New York. From there, the funds were transferred to BofA in Toronto. BofA would then forward the funds in Canadian dollars to the recipient designated by DCD.

On October 30, 2000, Detroit City Dairy entered into a Foreign-Exchange Close-Out Agreement ("Agreement") with Bank of America Canada, which governed the terms of forward contract trades between the parties. The Agreement provides that all disputes shall be governed by Canadian law and resolved via arbitration. The Agreement states in pertinent part:

> 6. <u>Applicable Law</u>
> This Agreement shall be governed by and construed and enforced in accordance with the laws of the Province of Ontario without reference to its law relating to conflicts of law.
>
> 7. <u>Arbitration</u>
> The parties will settle any controversy or claim relating to the Agreement by arbitration persuant [sic] to the Arbitration Act of Ontario.

*See* Def. Ex. A. at §§ 6-7.

Third-Party Defendant Allan R. Michel ("Michel"), an independent contractor, served as an agent and/or contractor of DCD. Michel conducted forward contract trades with Bank of America Canada. DCD claims that Michel conducted certain

2

forward contract trades with Bank of America Canada without approval and/or knowledge of DCD.  Bank of America Canada paid approximately $144,390.11 earned from the subject trades to Michel.  DCD filed this lawsuit to recover the money paid to Michel.

BofA relies on the Agreement entered into with Detroit City Diary to dismiss DCD's claim and/or compel arbitration.

### III.  ANALYSIS

According to BofA, Detroit City Diary was a customer for years with an established credit history and DCD, a newer company, did not have the credit history necessary to conduct certain contracts, specifically, forward contracts.  Out of good will for the Must Brothers, BofA claims that it entered into the Agreement with Detroit City Dairy so that DCD would be allowed to conduct trades.  BofA argues that "but for the Agreement," DCD would not have been allowed to conduct trades.  Moreover, BofA claims that by conducting trades DCD agreed to arbitrate its claims.  BofA argues that the Agreement required DCD to arbitrate.

DCD disagrees, arguing that: 1) DCD was not a signatory to the Agreement and never agreed to arbitration; 2) the Agreement is a common law arbitration agreement, which under the laws of Michigan may be unilaterally revoked at any time; and 3) any obligation that DCD may have to arbitrate was waived by BofA's participation in this litigation.

"Where parties agree to submit any conflicts, breaches or other grievances arising under a contract to an arbitrator, they are, naturally enough, bound by that agreement, and a party may not unilaterally decide, at the last minute, that it would

3

prefer to take the disputed matter to court." *Dean Witter Reynolds, Inc. v. McCoy,* 995 F.2d 649, *650 (6th Cir. 1993)(citing *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-49 (1986)).

Courts have long recognized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also AT&T Technologies*, 475 U.S. at 648 (1985). Generally, arbitration clauses cannot be enforced by persons who are not parties to the contract. *See* 21 Richard A. Lord, WILLISTON ON CONTRACTS § 57.19 (4th ed. 2006). In some circumstances, however, an arbitration agreement may be enforced against a non-signatory party. "Ordinary principles of contract law are used to determine if a non-signatory is to be bound by the contract and 'a party may be bound by an agreement to arbitrate even in the absence of a signature.'" *LaSalle, Inc. v. Int'l Broth. of Elec. Workers Local No.,* 665 336 F.Supp.2d 727, *729 (W.D.Mich. 2004).

In *Int'l Union of Operating Engineers, Local No. 18, AFL-CIO v. Dayton Power & Light Co.*, 500 F.2d 766, 767, the Union sought to compel Dayton to submit to binding arbitration based on a Memorandum executed between Dayton, its agent, Maxon Construction Company, and the Union. *Id.* The Memorandum provided that any grievance between local unions and contractors shall be settled by arbitration. The Sixth Circuit stated, "although clearly a party to the Memorandum, Dayton was a party to it as an owner, not as a contractor." *Id.* Therefore, the Court held that the unambiguous language of the Memorandum requiring contractors not owners to

arbitrate militated against compelling arbitration. *Id.*

Similarly, the Third Circuit refused to compel non-signatories to arbitrate. *Bel-Ray Co, Inc. v. Chermite (PTY) LTD*, 181 F.3d 435 (3rd Cir, 1999). In *Bel-Ray*, the Court found that there was no basis for the plaintiff signatory to compel non-signatories who were directors of the defendant corporation to arbitrate plaintiff's claims when they had not signed an agreement to do so. *Id.* at 445-46.

Here, the sole issue is whether the Agreement between Detroit City Dairy and BofA obligated DCD to arbitrate its disputes with BofA. It is undisputed that DCD is not a signatory to the Agreement. The deposition testimony of Mr. Rocky Zanella, a credit manager at BofA, also demonstrates that DCD did not intend to be bound by the Agreement.

Mr. Zanella's testimony reveals that DCD did not sign the Agreement or fill out any paperwork relating to its currency trading. When asked who the Agreement is between, Mr. Zanella states, "Bank of America and Detroit City Diary." Def. Ex. A at 40. He also testifies that to the best of his knowledge DCD did not complete any paperwork to conduct trades. Def. Ex. A. at 58. Further, Mr. Zanella reveals that DCD actually was the existing customer prior to the signing of the Agreement and not Detroit City Dairy. Def. Ex. A. at 57. In addition, Mr. Zanella indicates that the Agreement was formed so that Detroit City Dairy -- not DCD -- could conduct currency transactions. Def. Ex. A. at 56-57. He also states it is his belief that BofA did not allow DCD to enter the Agreement because of its financial history and transactions. Def. Ex. A. at 58, 131. In sum, his testimony directly refutes BofA's arguments that DCD was a new company which entered into the Agreement in order to begin trading currency.

In response, BofA's attorney Jeffrey S. Kopp submits a letter to the Court stating that "[e]ven though DCD and Detroit City Diary were distinct legal entities, the Must Brothers had actual knowledge of the Agreement and they wanted to complete forward contracts with Bank of America for DCD.  By entering into the Agreement, they understood they could perform such transactions, and in fact, did so, as all of the trades at issue in this case were conducted under the auspices of the Detroit City Diary account number pursuant to the Agreement."  This letter, however, is not evidence.  Even though the trades at issue were conducted in 2002, after the Agreement was executed, BofA fails to present any affidavits, sworn testimony, or other evidence supporting its allegations.

Nevertheless, BofA argues that DCD should be bound to arbitration because its claims here relate to currency trades which were conducted pursuant to the Agreement.  A court may hold that a party is estopped from asserting that a lack of a written arbitration agreement precludes arbitration.  *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., Inc.*, 741 F.2d 342, 344 (11th Cir. 1984)(finding that the claims against the non-signatories were "intimately founded in and intertwined with the underlying contract obligations.").  Claims must be arbitrated if liability arises solely from the contract containing an arbitration clause or must be determined by reference to it.  *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000).  On the other hand, claims can be brought in tort if liability arises from general contractual obligations imposed by law.  *See, e.g., R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 163-164 (4th Cir. 2004).  In *R.J. Griffin & Co.*, the Fourth Circuit explained that the policy of allowing non-signatories to compel

signatories to arbitrate through the principle of equitable estoppel "operates to prevent one party from holding another to the terms of an agreement while simultaneously avoiding the same agreement's arbitration clause." *R.J. Griffin & Co.*, 384 F.3d at 165 (4th Cir. 2004).

Recently, the Sixth Circuit applied the test used by the Fourth Circuit for determining when equitable estoppel applies against a signatory to an arbitration clause:

> [E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the . . . agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Am. Bankers Ins. Group v. Long*, 453 F.3d 623, 627 (quoting *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005)(denying application of estoppel where the underlying claims did not rely on the contract containing the arbitration clause). The Sixth Circuit further instructed that a court should examine the underlying complaint in its determination of whether or not to apply equitable estoppel. *Id.*

DCD's Complaint reveals that its claims against BofA are for (1) breach of bank's duty to customer; (2) conversion; and (3) violation of Michigan law prohibiting a bank from charging against a customer's account an item that is not properly payable under M.C.L. § 440.4401.

The Court notes that DCD cast all but one of its claims against BofA as tort claims rather than contract claims and none of these claims references or relies on an interpretation of the Agreement. The liability of BofA also does not turn on the question

of whether or not the Agreement has been breached.  Moreover, BofA fails to produce any evidence that the trades at issue were conducted pursuant to the Agreement rather than in the normal course of business with DCD.  Therefore, the Court finds that the claims do not directly relate to the obligations between BofA and Detroit City Dairy in the Agreement.

Further, as noted by the Second Circuit, "It matters whether the party resisting arbitration is a signatory or not. . . . [A] court should be wary of imposing a contractual obligation to arbitrate on a noncontracting party."  *Merrill Lynch Investment Managers v. Optibase*, LTD, 337 F.3d 125 (2d Cir. 2003)(citations omitted).  DCD is not a signatory to the Agreement and the Agreement's unambiguous language does not support the position asserted by BofA.  Moreover, BofA fails to adduce facts that would support a finding that DCD should be forced to arbitrate in the absence of an agreement.  The Court finds that DCD is not a party to the Agreement and thus, it is not obligated to arbitrate its claims.

It is not necessary to determine whether the arbitration agreement may be revoked under Michigan law or if BofA waived arbitration.

**IT IS SO ORDERED**.

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated:  January 5, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 5, 2007.

s/Linda Vertriest
Deputy Clerk